THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| YAKOV GOKH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-26-295-SLP |
| | ) |
| FRED FIGUEROA et al., | ) |
| | ) |
| Respondents | ) |

## REPORT AND RECOMMENDATION

Petitioner Yakov Gokh seeks habeas corpus relief under 28 U.S.C. § 2241. (ECF No. 1). Respondent has responded and Petitioner has replied. (ECF Nos. 16 & 17).[1] United States District Judge Scott L. Palk referred the matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). For the reasons set forth below, the undersigned recommends that the Court **GRANT** habeas relief to Petitioner and release him from custody immediately under the terms of his previous Order of Supervision.

## I.    FACTUAL BACKGROUND

Petitioner was born in the former Soviet Union and entered the United States as a refugee fleeing from Uzbekistan on February 1, 1990. (ECF No. 1:3 & 16:1). Petitioner identifies himself as a stateless individual who "is a citizen of no country." (ECF No. 1:3). On September 22, 1997, Petitioner was ordered removed from the United States to the

---

[1] Petitioner has also filed a Motion to Expedite Ruling. (ECF No. 15), which, if the Court adopts this recommendation, should be moot.

nation of Israel, or, alternatively, Uzbekistan. (ECF Nos. 1:6 & 16-3). Both countries refused to accept Petitioner due to lack of citizenship and on March 30, 1999 Immigration and Customs Enforcement (ICE) officials released Petitioner under an Order of Supervision (OOS). (ECF No. 16-4). On May 2, 2000, Petitioner was arrested for assault and placed back into ICE custody. (ECF No. 16-1:3). On December 14, 2000, a decision was made to continue Petitioner's detention, but on July 25, 2001, a Post-Custody Review sheet indicates that Petitioner was born in Uzbekistan, had citizenship nowhere; there was "no method in which to obtain a travel document to remove [him] to Uzbekistan." (ECF No. 16-6). As a result, it was determined that Petitioner was eligible for release "under the ZADVYDAS decision" and "[w]ith a strict Order of Supervision this panel feels that [Mr. Gokh] can become a productive member of society." (ECF No. 16-6:5)."

Due to the September 11 attacks, however, Petitioner's release was suspended and on October 15, 2001, Petitioner was released to Collin County Texas, where an arrest warrant had been issued for him. (ECF No. 16-1:3). Following his release from the Texas Department of Corrections, Petitioner was released on an OOS on September 19, 2002. (ECF No. 16-7). Petitioner was placed back into ICE custody in August of 2006 and in two "Post Order Custody Reviews" dated November 22, 2006 and February 22, 2007, detention was continued due to fear of Petitioner committing a violent act or being a danger to society. *See* ECF Nos. 16-8 & 16-9. Respondents submit a declaration from Deportation Officer Daniel Escoto, who has been assigned to Petitioner's case, stating that on April 2, 2007, Petitioner was released on an OOS, but Respondent has failed to

attach any evidence of the same, **despite the Court's specific instructions to do so**. *See* ECF No. 8:2 ("If Respondents file a Response, they **must** provide copies specifically discussed within any response they submit, and **must include** copies specific to Petitioner's current detainment, current bond hearings, **related past orders for supervision** subject to the current detainment and travel documents secured for this petitioner.") (emphasis added).

Subsequent to the release, Petitioner apparently had four "encounters" with ICE officers in 2008, 2013, 2016, and 2019, and, after the 2019 encounter, no action was taken because there was no significant likelihood of Petitioner's removal in the reasonably foreseeable future. (ECF No. 16-1:4). On October 31, 2025, ICE officials encountered Petitioner during his in-person check-in appointment, at which time they re-detained Petitioner and determined he would be held in custody pending removal. (ECF No. 16:4). On December 2, 2025, Petitioner was provided with a Russian travel document request (TDR) application. (ECF No. 16-1). On December 12, 2025, a completed TDR was received and sent to ICE ERO Headquarters for review and on February 17, 2026, it was re-submitted to ICE ERO Headquarters for review. (ECF No. 16-1). According to a declaration submitted by Deportation Officer Daniel Escoto on March 2, 2026, Petitioner was transferred to Oakdale for staging for removal and currently detained at Alexandria Staging Facility, awaiting removal. (ECF No. 16-1). According to Officer Escoto, Petitioner was manifested for removal on March 9, 2026; however, he was removed from the manifest because the removal flight was over-manifested and unable to accommodate all

the manifested subjects. (ECF No. 16-1). To date, neither party has provided the Court with Mr. Gokh's "A Number," date of birth, or any type of update regarding his current status. Without more, the undersigned presumes that Petitioner is still awaiting removal.

## II.    PETITIONER'S CLAIMS

Petitioner asserts four Counts for relief. In Count One, Petitioner argues a violation of the Immigration and Nationality Act (INA), the Administrative Procedures Act (APA) and the *Accardi* Doctrine. (ECF No. 1:8-9). In Count Two, Petitioner alleges a violation of his Fifth Amendment right to procedural Due Process. (ECF No. 1:9-11). In Count Three, Petitioner alleges a violation of his Fifth Amendment right to substantive Due Process. (ECF No. 1:12). In Count Four, Petitioner alleges a violation of Section 504 of the Rehabilitation Act of 1973. (ECF No. 1:13-14).

As relief, Petitioner requests the Court to "Order Respondents to release Petitioner from their custody and prohibit his re detention without compliance with 8 C.F.R. § 241.13(i)." (ECF No. 1:15). Mr. Gokh also requests declaratory and injunctive relief. (ECF No. 1:25-26).[2]

---

[2] Petitioner also seeks "reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412[.]" (ECF No. 1:15). But to the extent Petitioner may be entitled to EAJA fees and costs, he must seek those separately. 28 U.S.C. § 2412(d)(1)(B); *see also Daly v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the undersigned does not address this request at this juncture.

## III.   STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear . . . challenges to the lawfulness of immigration related detention." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## IV.   LEGAL FRAMEWORK FOR THE DETENTION OR RELEASE OF ALIENS SUBJECT TO A FINAL ORDER OF REMOVAL

Title 8, Section 1231(a)(2)(A) of the United States Code mandates that "the Attorney General shall detain" an alien who is ordered to be removed from the country. However, the length of detention cannot be indefinite: in general, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). This is known as the "removal period," and begins at the latest of: (1) "[t]he date the order of removal becomes administratively final," (2) "the date of the court's final order" when a removal order is judicially reviewed, or (3) "the date the alien is released from detention or confinement" if the alien is detained according to a non-immigration process (e.g., imprisonment for a crime). *Id.*; *see Zadvydas*, 533 U.S. at 682 ("When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody.").

However, an exception exists for certain aliens, including aliens who have violated criminal law, who "may be detained beyond the removal period." § 1231(a)(6); *see Zadvydas*, 553 U.S. at 682 ("A special statute authorizes further detention if the Government fails to remove the alien during those 90 days.") (citing § 1231(a)(6)). However, even under these circumstances, a non-citizen may only be detained past the 90-day removal period following a removal order if found to be "a risk to the community or unlikely to comply with the order of removal" or if the order of removal was on specified grounds. *Id.* § 1231(a)(6). But even where initial detention past the 90-day removal period is authorized, if "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by [§ 1231(a)(6)]. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances . . . ." *Zadvydas v. Davis*, 533 U.S. 678, 699-700. The Court further specified that detention is presumptively reasonable for only six months beyond the original 90-day removal period. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Pursuant to 8 U.S.C. § 1231(a)(3), a non-citizen with a final order of removal "who is not removed within the [90-day] removal period . . . shall be subject to [an order of] supervision under regulations prescribed by the Attorney General." Once an OOS has been issued, it may be revoked and a non-citizen may be re-detained if: "(1) the purposes

of release have been served; (2) the alien violates any condition of release; (3) it is appropriate to enforce a removal order . . . ; or (4) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2); *see also id.* § 241.13(i) (permitting revocation of an order of supervision only if a non-citizen "violates any of the conditions of release"). Upon revocation of an order of supervision, ICE must give a non-citizen notice of the reasons for revocation and a prompt interview to respond. 8 C.F.R. § 241.4(l)(1).

Following the Supreme Court's holding, the *Zadvydas* challenge to continued detention was codified into the immigration regulations governing the detention review process with amendments to 8 C.F.R. § 241.4 and the addition of 8 C.F.R. § 241.13.[3] These regulations were in effect at the time of Petitioner's re-detention in 2025.

## V.  PETITIONER IS ENTITLED TO HABEAS RELIEF BECAUSE ICE DID NOT ADHERE TO ITS OWN REGULATIONS

Petitioner argues that ICE's revocation of his OOS was not in accordance with the INA; specifically, that the ICE officer processing his re-detention failed to give him any reason for the revocation of his OOS and "Respondents did not provide Mr. Gokh with an

---

[3]  *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967-01, 56968, 2001 WL 1408247 (F.R.) (Nov. 14, 2001) (to be codified at 8 C.F.R. Parts 3 and 241) ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future. Except as provided in this new § 241.13, the existing detention standards in § 241.4 will continue to govern the detention or release of aliens who are subject to a final orders of removal. Thus, aliens who are determined not to be a danger to the community or a flight risk may be released under § 241.4 regardless of whether there is a significant likelihood of removal.").

interview or an opportunity to respond." (ECF No. 1:9). The Court should find that ICE did not abide by its own regulations with regard to Petitioner's re-detention, and habeas relief is appropriate.

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979). Two separate provisions in the Code of Federal Regulations deal with the revocation of release with regard to an OOS: 8 C.F.R. § 241.4(l) and 8 C.F.R. § 241.13(i). *See Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *2 (S.D. Cal. Nov. 19, 2025) ("Supervised release and any revocation of such release thereafter is governed by either 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13"). "Revocation under § 241.13(i) applies only to aliens released under § 241.13(g)—where ICE has formally determined that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." *Grigorian v. Bondi*, 2025 WL 2604573, at *4-5 (S.D. Fla. Sept. 9, 2025).

Petitioner argues that his OOS was issued pursuant to 8 C.F.R. § 241.13 and ICE has no information that could reasonably lead it to believe changed circumstances exist that justify re-detention under 8 C.F.R. § 241.13(i)(2)-(3). (ECF No. 1:9). Respondents state: "Petitioner's [OOS] was issued pursuant to 8 C.F.R. § 241.4, not § 241.13." (ECF

No. 16:8). Respondents cite nothing in support of this statement, and in fact Respondents failed to attach the most recent and relevant OOS which was apparently issued in 2007, instead attaching only the 1999 and 2002 OOSs, which are silent regarding any statutory reference. *See* ECF No. 16-4 & 16-7. In support of their blanket statement without evidentiary support, Respondents point to two Post-Order Custody Reviews which found that Petitioner should be continued to be detained because he posed a risk to society. *See* ECF No. 16:8. Citing ECF Nos. 16-8 & 16-9. But the problem with Respondent's reliance on these documents is that they pre-date the controlling OOS apparently issued on April 2, 2007, which, again, Respondent fails to provide. No matter which provision applies, however, ICE has failed to abide by its regulations.

### A.    8 C.F.R. § 241.13(i)

#### 1.    Respondents Do Not Meet Their Burden of Showing Changed Circumstances Such That There Was a Significant Likelihood That Petitioner May Be Removed in the Reasonably Foreseeable Future

ICE may revoke an OOS and "return the alien to custody" if he violates the conditions of supervised release or "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Respondents do not allege Petitioner violated any conditions of release, so Respondents must rely solely on the "changed circumstances" prong as the justification for revocation, assuming § 241.13(i) applies. This Court has previously concluded "the burden [is] on Respondents to establish a significant likelihood of removal in the reasonably foreseeable future in the context of

re detention under § 241.13(i)(2)." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *2 (W.D. Okla. Nov. 20, 2025) (citation modified). Respondents do not have any explanation for why Petitioner was re-detained, stating only "On October 31, 2025, Gokh was encountered by ICE ERO during his routine check-in under his order of supervision and a custody redetermination was made, detaining Gokh pursuant to his final removal order." (ECF No. 10:2).

### 2.    Violation of § 241.13(i)(3)

Petitioner alleges that Respondents have "ignor[ed] 8 C.F.R. § 241.13(i)(2) and (3)'s requirements that they provide a rationale—a determination that changed circumstanced now render Mr. Gokh significantly likely to be removed in the reasonably foreseeable future—to revoke an order of supervision, as well as a[] meaningful opportunity to respond to that rationale." (ECF No. 1:9). Petitioner also argues that Respondents did not conduct an initial informal interview promptly after his return to custody to afford him an opportunity to respond to the reasons for revocation stated in the notification, as required by § 241.13(i)(3). (ECF No. 1:9).

Again, Respondents fail to address Petitioner's claims as they pertain to § 241.13(i), instead arguing only that the revocation was proper under 8 C.F.R. § 241.4(l)(2). *See* ECF No. 16. ICE's regulations, however, provide that a Revocation of Release Notice should have been provided to Petitioner and should have stated the reasons for his revocation of release. *See* 8 C.F.R. § 241.13(i)(3) ("Upon revocation, the alien will be notified of the reasons for revocation of his or her release."). Further, with

no evidence to the contrary from Respondents, the undersigned also concludes ICE did

not comply with requirements for an "initial informal interview" under § 241.13(i)(3) so

Petitioner could respond to ICE's basis for his revocation and re-detention.

### B.    8 C.F.R. § 241.4(l)

ICE also failed to properly conform to the requirements of 8 C.F.R. § 241.4(l).

Respondents allege that 8 C.F.R. § 241.4(l)(2) "has no requirement that ICE provide an

interview after his return to custody." (ECF No. 16:10). This is an incorrect interpretation

of that regulation.

Revocation under § 241.4 may occur under the following circumstances:

(1)    Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. . . . **Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.**

(2)    *Determination by the Service*. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

(i)    The purposes of release have been served;

(ii)    The alien violates any condition of release;

(iii)   It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv)   The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

(3)   Timing of review when release is revoked. If the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section, the HQPDU Director shall schedule the review process in the case of an alien whose previous release or parole from immigration custody pursuant to a decision of either the district director, Director of the Detention and Removal Field Office, or Executive Associate Commissioner under the procedures in this section has been or is subject to being revoked. The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked. That custody review will include a final evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release. Thereafter, custody reviews will be conducted annually under the provisions of paragraphs (i), (j), and (k) of this section.

8 C.F.R. § 241.4(l) (emphasis added). Respondents contend that Petitioner's present detention was initiated pursuant to § 241.4(l)(2), which they argue does not contain language requiring notice of revocation and the informal interview mandated by § 241.4(l)(1). (ECF No. 10:9). However, "courts have held that the same requirements" of notice and an interview "constrain revocation of release under [§ 241.4(l)(2)] as well." *Xayakesone*, 2025 WL 3229102, at *3. In reaching the same conclusion, one court reasoned:

While not a model of clarity, the text of 8 U.S.C. § 241.4(l) is inconsistent with the Government's argument that Petitioner was not entitled to notice or an interview. The Government concedes that ICE must follow certain

procedures if it revokes a noncitizen's release pursuant to paragraph (l)(1) for violation of a condition of release, but argues that those same procedures do not apply to noncitizens whose release is revoked pursuant to paragraph (l)(2) because paragraph (l)(2) provides distinct, discretionary avenues for the revocation of release. But this argument is in significant tension with the fact that paragraph (l)(2) also covers circumstances where a violation of a condition of supervised release is the basis for revoking a noncitizen's release. See 8 C.F.R. § 241.4(l)(2)(ii). This overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (l) sets forth a unified set of procedures for the revocation of removal.

Zhu v. Genalo, 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025) (internal citations omitted); see also Duong v. Noem, No. 3:26CV1002-JES-BJW, 2026 WL 555597, at *2 (S.D. Cal. Feb. 27, 2026) ("[R]evocation under . . . either § 241.4(l)(1) or § 241.4(l)(2) . . . requires an adequate notice of the reasons for the revocation of release and a prompt initial informal interview to afford the alien an opportunity to respond to the reasons given in the notice."); Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) ("Courts . . . have interpreted section 241.4(l) as requiring [the procedures of § 241.4(l)(1)] upon the revocation of release regardless of the reason for the revocation."); Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) ("District courts have consistently . . . held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2).").

The undersigned agrees that § 241.4(l)(2) requires the government to provide the notice of revocation described in § 241.4(l)(1). In addition to the above textual reasoning, this conclusion is bolstered by the reality that "[b]oth 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 were intended to provide due process protections to [non-citizens] following the

removal period as they are considered for continued detention, release, and then possible revocation of release." *Constantinovici*, 2025 WL 2898985, at \*5 (internal quotation marks omitted). Respondents' interpretation would result in more due process protections for non-citizens who violated their OOS than for those who did not, which is an absurd result. *See id.* Respondents therefore violated § 241.4 when they failed to provide Petitioner a notice and reasons for his revocation of release.

The Court also notes that 8 C.F.R. § 241.4(l)(3) provides for a review process consisting of "notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." This provision applies to re-detentions governed by § 241.4(l)(2). *See Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at \*5 (W.D. Okla. Jan. 15, 2026) ("[T]he notice and interview requirements of § 241.4(l)(3) apply to revocations conducted pursuant to § 241.4(l)(2)").

Finally, Respondents cite *Bahadorani v. Bondi*, No. CIV 25-1091-PRW, 2025 WL 3048932, at \*2 (W.D. Okla. Oct. 31, 2025), arguing "failure to provide written notice of revocation is harmless error, and even then, such error is cured by Petitioner's opportunity to contest his detention before this Court." (ECF No. 16:10). According to Respondents, *Bahadorani* (a case concerning compliance with 8 C.F.R. § 241.13) "is applicable here because even if the Respondents failed to comply with 8 C.F.R. § 241.4, which has much broader discretion for removal than § 241.13, that failure has not prejudiced Petitioner [because] . . . he is represented by counsel, and he has been afforded an opportunity

and process to contest his detention." (ECF No. 16:10-11). But as noted by Petitioner in his reply, this Court rejected this very argument and distinguished *Bahadorani* in *Owdettalah v. Bondi*, No. CIV-25-1546-SLP, 2026 WL 483648, at *5 (W.D. Okla. Feb. 20, 2026). The Court should apply this analysis to the instant case and reject Respondents' argument.

### C.     Conclusion

The undersigned finds that Respondents have failed to show that ICE abided by its own regulations in revoking Petitioner's OOS, making the revocation unlawful. "ICE, like any agency, has the duty to follow its own federal regulations. As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, at *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)); *see Qui v. Carter*, 2025 WL 2770502, at *1-2 (D. Kan. Sep. 26, 2025) (finding that failure to properly revoke the petitioner's OOS "pursuant to the applicable regulations" rendered revocation ineffective). The undersigned recommends the Court follow its recent reasoning in *Owdetallah v. Bondi*, et al., No. CIV-25-1546-SLP, 2026 WL 483648, at *1 (W.D. Okla. Feb. 20, 2026) which reached this conclusion under similar circumstances, and join the "majority of district courts [that] have found such regulatory defects amount to due process violations that entitle a petitioner to habeas relief." *Pham v. Bondi*, No. CIV-25-1157-SLP, 2025 WL 3243870, at *1 (W.D. Okla. Nov. 20, 2025) (collecting cases).

**D.    ICE's Failure to Abide by its Regulations Warrants Immediate Release**

Based on ICE's violation of its own regulations, the undersigned concludes that Petitioner's detention is unlawful and that his release is appropriate under 28 U.S.C. § 2241(c)(3). This Court has found that "by mandating minimum procedures, the regulation ensures the individual is afforded the basic due process protections guaranteed by the Fifth Amendment. A wholesale failure to provide the required notice and the mandated interview—thereby depriving the individual of any meaningful opportunity to contest the revocation of release—implicates those constitutional protections directly." *Li*, 2026 WL 475133, at *3. Thus, "Respondents are mistaken in concluding that this Court may not grant habeas relief solely because the text of § 2241(c)(3) fails to contain an explicit proviso authorizing the writ for violations of a federal regulation." *Id.* "ICE's failure to abide by its own regulations in making the decision to revoke Petitioner's OOS renders the revocation unlawful, and . . . his release is therefore appropriate." *Ye v. Bondi*, No. CIV 25-1230-D, 2025 WL 3485420, at *3 (W.D. Okla. Dec. 4, 2025). As one court stated:

> Nothing in this Opinion constitutes a judgment on the Government's policy decision to devote public resources to removing as many aliens as it can. That is a political choice that is not before the Court. And, indeed, the Government's own regulations, as discussed above with respect to Section 241.4(l)(2), grant it enormous discretion regarding when and how the previously-authorized release of removable aliens may be revoked. But that discretion is not unlimited. If the Government does choose to embark upon a campaign of mass removal, the Constitution, its guarantees of due process to all persons present in the United States, and the rule of law all demand that detention and removal be conducted lawfully. The lawful revocation of [Petitioner's] supervised release presents a low bar to the Government, and they may yet choose to clear it, but they have not done

so on the present record and accordingly [Petitioner] must be released from custody immediately.

*E.M.M. v. Almodovar*, 2025 WL 3077995, at \*4 (S.D.N.Y. Nov. 4, 2025) (finding that ICE violated § 241.4 because an assistant field office director is not authorized under that regulation to revoke an OOS).

## VI.    PETITIONER'S OTHER CAUSES OF ACTION AND REQUESTS FOR RELIEF

Because the undersigned recommends habeas relief, the Court should decline to address Petitioner's remaining arguments. *See Sanchez*, 2025 WL 3484756, at \*1 (declining to reach petitioner's *Zadvydas* claim after agreeing with him on his regulatory violation claim); *see also Ye*, 2025 WL 3485420, at \*2 n.2 (acknowledging the Magistrate Judge did not consider petitioner's remaining arguments for habeas relief after recommending habeas relief on the regulatory violation). Further, considering the recommended relief, the Court need not address Petitioner's request for declaratory judgment and permanent injunctive relief.

## VII.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the reasons discussed above, the undersigned recommends that the Petition for Writ of Habeas Corpus (ECF No. 1) be **GRANTED to the extent it requests habeas relief under 28 U.S.C. § 2241**. The undersigned recommends that the Court order Respondents to **release Petitioner from custody immediately**, under the terms of his previous Order of Supervision. *See Zadvydas*, 533 U.S. at 696 ("The choice, however, is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated."). The undersigned

further recommends that the Court order Respondents to certify compliance by filing a status report within (5) five business days of the Court's order.

The parties may to object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[4] Any objection must be filed not later than **April 28, 2026**. *See id*. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party wishes to respond to the other party's objections, such response must be filed not later than **May 1, 2026**. See Fed. R. Civ. P.72(b)(2). The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on April 21, 2026.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

---

[4] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to seven days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker*, 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) (noting that "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").